MGD

WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Daniel CV Aguilar,

                Plaintiff,

v.

Charles Wynn, et al.,

                Defendants.

No. CV-22-08185-PCT-JAT (MTM)

**ORDER**

      Plaintiff Daniel CV Aguilar, who is currently confined in the Arizona State Prison Complex-Yuma, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendants move for summary judgment. (Doc. 68.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 70), and he opposes the Motion. (Docs. 73, 76.) Also before the Court is Defendants' Motion to Strike Plaintiff's Amended Statement of Facts. (Doc. 77.)

**I.     Background**

      On screening the First Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourth Amendment false arrest claim against Defendants Chino Valley Police Department (CVPD) Chief Wynn and CVPD Officers Pizzi, and Syzmanski and directed them to answer the claim. (Doc. 10.) The Court dismissed the remaining Defendant. (*Id.*)

**II.    Motion to Strike**

      On February 29, 2024, Plaintiff filed Doc. 73, which was docketed as Plaintiff's

1   Response to Defendants' Motion for Summary Judgment.[1]  (Doc. 73.)  In this document,
2   Plaintiff asks the Court to "dismiss" Defendants' Motion for Summary Judgment because
3   it "does not contain the correct case number," but he makes no other argument in the
4   document.[2]  (Doc. 73 at 1.)

5          Another document filed by Plaintiff on February 29, 2024, was docketed as
6   Plaintiff's Statement of Facts and consists of 80 pages beginning with a Table of Exhibits
7   A through R.  (Doc. 75.)  Exhibit A contains Plaintiff's Declaration (Doc. 75 at 3-7) to
8   which he attaches his "Disputed Facts in Opposition to [Defendants'] Statement of Facts"
9   (*id.* at 9-16), "Plaintiff's Statement of Facts in Opposition to Defendant Charles Wynn
10  Motion for Summary Judgment" (*id.* at 18-25), and Plaintiff's "Response in Opposition to
11  Defendant Charles Wynn, et al, Motion for Summary Judgement," which is more clearly
12  Plaintiff's intended Response to Defendants' Motion for Summary Judgment (*id.* at 29-
13  34.)  This document ends at Exhibit M and does not include Exhibits N through R, even
14  though those Exhibits are listed in the Table of Exhibits.  (*See* Doc. 75-1 at 1, 27-31.)

15         On March 5, 2024, Plaintiff electronically filed what was docketed as an "Amended
16  Statement of Facts."  (Doc. 76.)  This appears to be the same document filed at Doc. 75 but
17  now includes Exhibits N through R.  (*See* Doc. 76-2 at 13-47.)

18         Defendants seek to strike Doc. 76 because Plaintiff did not seek leave to file an
19  untimely, amended statements of facts (Plaintiff's response was due February 29, 2024)
20  and because Doc. 76 is not authorized by statute, rule, or court order.  (Doc. 77 at 1-2.)
21  Plaintiff responds that he filed his Response on February 29, 2024, and he eventually
22  received confirmation from the prison librarian that all 127 pages of his Response were
23  electronically filed that day in three separate batches.  (Doc. 80 at 1-2.)  Plaintiff states that

24  _____

25         [1] Plaintiff titled Doc. 73 as his "Motion to Dismiss Defendants Motion for Summary
26  Judgement."

27         [2] As evidence that Defendants' Motion contains the incorrect case number, Plaintiff
    attaches the first page of Defendants' Motion, which has been stamped "DRAFT" and
28  contains the case number 4:20-cv-00188-JGZ-PSOT, and he attaches a Declaration filed
    by Defendants that has the wrong case number.  (Doc. 73 at 6, 8.)

he could not have sent anything for prison e-filing on March 5, 2024, because his unit was on lockdown that day.  (*Id.* at 2.)  Plaintiff states that the third batch of his February 29, 2024 filing must have been incomplete, and the prison librarian had to try multiple times before all 127 pages were received by the Court.  (*Id.* at 2-3.)  Defendants reply that it is not possible to tell when the filing at Doc. 76 was submitted to the Court, and they repeat that Plaintiff did not seek leave to file an untimely, amended statement of facts.  (Doc. 81.)

Defendants do not address the issues Plaintiff raises in his Response about problems the prison librarian may have had in e-filing the entirety of Plaintiff's Response.  Nor do Defendants argue they are prejudiced in any way by the Court considering Plaintiff's complete Response at Doc. 76 filed a few days after the filing deadline.  Additionally, Doc. 76 merely adds missing exhibits from Plaintiff's previous, timely filed Statement of Facts, and there is no evidence the failure to send all the attachments was due to bad faith or a lack of due diligence on Plaintiff's part.

Accordingly, the Court will deny Defendants' Motion to Strike and will consider Plaintiff's filing at Doc. 76 to be Plaintiff's complete Response to Defendants' Motion for Summary Judgment.

### III.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

1    governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

2    jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

3    242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

4    Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its

5    favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

6    it must "come forward with specific facts showing that there is a genuine issue for trial."

7    *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

8    citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

9         At summary judgment, the judge's function is not to weigh the evidence and

10   determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,

11   477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

12   all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited

13   materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

14   **IV.    Facts**

15        On April 9, 2021, CVPD personnel responded to Plaintiff's residence at 349 S.

16   Road. 1 West #10, Chino Valley, Arizona in response to a call from Gina Vargas, who

17   reported she had been in a relationship with Plaintiff, and he had pushed her while they

18   were outside his trailer, causing her to fall and hit the back of her head.  (Doc. 69 (Defs.'

19   Statement of Facts (DSOF)) ¶¶ 1-2.)  Plaintiff disputes that it was Ms. Vargas who called

20   the police, asserting that a neighbor initiated the call.  (Doc. 76 at 9-17 (Pl.'s Controverting

21   Statement of Facts (PCSOF)) ¶ 1.)

22        While en route to Plaintiff's residence, Defendant CVPD Officer Szymanski was

23   advised by dispatch that one of the parties had departed the scene in a white 2021 Chevrolet

24   Silverado truck bearing AZ license plate CJA 7679.  (Doc. 69-2 (Szymanski Aff.) ¶ 3.)

25   Szymanski spotted the truck and performed a traffic stop on State Route 89.  (*Id*.)  When

26   the driver, Ms. Vargas, exited the vehicle, Szymanski saw she was upset and appeared to

27   have been crying; Vargas told Szymanski she had had two glasses of wine at some point,

28   had been arguing with Plaintiff, and Plaintiff pushed her while they were outside his trailer,

causing her to fall and hit the back of her head.  (*Id.*; DSOF ¶ 3.)[3]  Fire and ambulance crews arrived and as they were evaluating Ms. Vargas, Szymanski observed that rescue personnel found swelling in Ms. Vargas's right hand and a bump on the back of her head, which he heard Vargas tell the crew was caused by falling and hitting her head on her truck when Plaintiff pushed her.  (Szymanski Aff. ¶ 3.)  Szymanski assisted in moving Vargas's truck to a hotel where Vargas had decided to stay.  (*Id.*)  Szymanski had no contact with Plaintiff at the scene.  (DSOF ¶ 4.)

Plaintiff had no encounter with the CVPD on April 9, 2021.  (Doc. 76 at 18-25 (Pl.'s Statement of Facts (PSOFP)) ¶ 8.)

On or about April 14, 2021, the Town Prosecutor filed a Complaint against Plaintiff in Chino Valley Municipal Court alleging assault under A.R.S. § 13-1203(A)(1) and disorderly conduct under A.R.S. § 13-2904(A)(1), both class 1 misdemeanors, based on Plaintiff's alleged April 9, 2021 conduct.  (DSOF ¶ 5.)  That same day, Chino Valley Municipal Judge Hamm issued an Order in M1353CM2021000028 for Plaintiff to report to the Chino Valley Municipal Court on May 4, 2021 at 8:30 a.m.  (*Id.* ¶ 6.)  The Order warned Plaintiff that "IF YOU FAIL TO APPEAR AS ORDERED, A WARRANT MAY BE ISSUED FOR YOUR ARREST."  (*Id.*)  The Order states that it was sent to the Town Prosecutor and Plaintiff at his home address of 349 S. Road 1 West #10, Chino Valley, Arizona 86323.  (*Id.* ¶ 7.)

The summons was served on an "undeliverable address" because mailboxes do not exist at Mountain View Mobile Home and R.V. Park, where Plaintiff resided, and Plaintiff was never made aware of a Complaint filed against him.  (PCSOF ¶¶ 5-7.)  Plaintiff asserts that because he had no encounter with the CVPD on April 9, 2021, the only probable cause

---

[3] Plaintiff states that he disputes Defendants' paragraph 3 and that Ms. Vargas only "made this false statement after being pulled over" and while under the influence, but Plaintiff does not say what Ms. Vargas said that was false, and Ms. Vargas's second-hand statement is not being offered for the truth of the matter asserted but to show what Defendant Szymanski was told, which is relevant to his knowledge at the time.  (*See* PCSOF ¶ 3.)

justifying the Complaint and summons came from the "untruthfulness" in a report to the prosecutor and multiple CVPD reports that failed to include exculpatory information.[4] (PSOF ¶ 8.)

Plaintiff did not appear in court on May 4, 2021, and Judge Hamm signed an Arrest Warrant for Plaintiff, which commanded any and all authorized law enforcement officers "to arrest and bring the defendant before this court."  (DSOF ¶ 8.)[5]

On June 7, 2021, non-Defendant Officer Jones responded to a "possible family fight" call for service at a mobile home park located at 349 South Road 1 West, Lot # H10, Chino Valley, AZ 86323.  (Doc. 69-9 at 2-7 (Jones Aff.) ¶ 6.)  CVPD dispatch advised that it was reported that a female named "Gina" was walking in the park without shoes and was possibly just involved in a family fight with a male named "Daniel."  (*Id*.)  When Officer Jones located Gina in the mobile home park, she told Jones that Plaintiff was upset and made her get into his truck and then told her that "her family would never know what happened to her and they would never find her and that he was going to take her and drive her out somewhere."  (*Id*.)  Gina told Officer Jones that she was able to exit Plaintiff's truck and ran and hid in the trailer park until she saw Plaintiff's truck leave.  (*Id*.)  Officer Jones states that a record check revealed that Plaintiff had a valid outstanding arrest warrant issued from the Chino Valley Municipal Court, and a short time later, Officer Pelano

---

[4] Plaintiff does not specify what was not truthful in the police reports and he does not say what exculpatory information was omitted from those reports.  Plaintiff does spend considerable time in his Statement of Facts on the fact that Ms. Vargas had been drinking alcohol at the time she was stopped on April 9, 2021, and he asserts that law enforcement officers "chose to take the word of a felony DUI that was very intoxicated and in all reality would of [sic] said or done just about anything to get out of a DUI charge."  (*See* Doc. 76 at 20-22 ¶¶ 7-12.)

[5] Plaintiff does not dispute that an arrest warrant was issued on May 4, 2021 based on his failure to appear, but he says he disputes Defendants' paragraph 8 because Defendant Szymanki's report from April 9, 2021 played a role in the complaint filed against Plaintiff, and Plaintiff contends that Szymanski's written report is contradicted by Szymanski's body-worn camera footage from April 9, 2021.  (*See* PCSOF ¶ 8.)  Plaintiff, though, does not specify what was contradictory in Szymanski's report and the camera footage.

advised via radio that he was in contact with "Daniel" at space H10. (*Id*.) Officer Jones then responded to space H10, where Officer Pelano was speaking to a male, later identified as Plaintiff, and then Defendant Officer Pizzi also arrived. (*Id*.)

Plaintiff was told about the arrest warrant, and Defendant Pizzi handcuffed Plaintiff without incident, double locking the handcuffs to prevent inadvertent tightening of the handcuffs. (DSOF ¶¶ 12-13.) The Arrest Warrant was filled out with a Certificate of Execution and signed by Officer S. Jones. (*Id.* ¶ 9.)[6] Officer Jones prepared the Arrest/Booking Record and Probable Cause Statement, noting that Officers had confirmed the validity of the outstanding warrant with the Yavapai County Sheriff's Office, that Plaintiff had returned to the scene, and Plaintiff refused to return Ms. Vargas' personal property that was in his residence. (DSOF ¶ 14.)

Defendants Wynn and Szymanski were not involved in Plaintiff's June 7, 2021 arrest. (*Id.* ¶ 15.) Plaintiff disputes paragraph 15, but he does not point to any evidence supporting that Wynn and Szymanski were directly involved that day. (PCSOF ¶ 15.) Rather, Plaintiff asserts that Defendant Szymanski's lack of truthfulness in the April 9, 2021 incident report "played a huge part in the Plaintiff being arrested" on June 7, 2021. (*Id*.) Plaintiff contends that if Szymanski had followed the CVPD's impaired driving policy (apparently with respect to Ms. Vargas on April 9, 2021), there "most assuredly [ ] would of [sic] never been a misdemeanor complaint made on the Plaintiff." (*Id*.) As to Defendant Wynn's involvement, Plaintiff cites to his Exhibit K, where he has hand copied a section of the CVPD "Law Enforcement Authority Policy," which states, in part, that "[t]he authority of a certified peace officer extends to any place in the State of Arizona (ARS § 13-3871 et seq.) as follows: (a) where he/she has the prior consent of the Chief of Police . . . ." (Doc. 76-1 at 20.)

---

[6] Plaintiff states that he disputes Defendants' paragraph 9 and denies the factual representations therein, but he does not say what he disputes in paragraph 9 or what is not factual. (*See* PCSOF ¶ 9.) Plaintiff disputes most of Defendants' statement about the events of June 7, 2021, and the Court will set forth Plaintiff's version of events separately.

Plaintiff generally disputes Defendants' version of what happened prior to his arrest on January 7, 2021. (*See* PCSOF ¶¶ 10-15.) According to Plaintiff, he and a friend were at his residence that day getting ready to run errands. (Doc. 76 at 2-7 (Pl. Decl.) ¶ 2.) Gina Vargas had been staying with him while her truck was being repaired, and as Plaintiff and his friend prepared to depart, Vargas, who was holding an open container of alcohol, started to get into Plaintiff's truck, and Plaintiff told Vargas she was not permitted to travel with an open container, which seemed to upset her. (*Id.* ¶¶ 4-6.) Plaintiff went on his errands without Vargas and when he returned to his residence, non-Defendant CVPD Officer Pelano approached Plaintiff and asked if Plaintiff knew Ms. Vargas, and Plaintiff said he did. (*Id.* ¶¶ 7-10.) Pelano asked Plaintiff if he had been in an altercation with Vargas, and Plaintiff said, "absolutely not." (*Id.* ¶ 11.) Officer Pelano told Plaintiff that he was there to retrieve Ms. Vargas' bag that was in Plaintiff's residence, and Plaintiff said he would grab the bag for Pelano, but Pelano refused to allow Plaintiff to get the bag. (*Id.*) Defendant Pizzi and non-Defendant Jones then pulled up in separate vehicles, and Pizzi walked up to Plaintiff, turned Plaintiff around, and informed him he was under arrest for a failure to appear warrant "for the last time that [Plaintiff] was arrested for domestic violence." (*Id.* ¶ 12.) This was shocking to Plaintiff because no one had asked him for identification. (*Id.* ¶ 13.) Plaintiff told the arresting officer that he had never had any previous contact with the CVPD or any other county agency, and he told Defendant Pizzi that he had never been arrested for domestic violence, which Pizzi could confirm. (*Id.* ¶¶ 14-15.) Pizzi then handcuffed Plaintiff and put him in the police vehicle; the cuffs were so tight they interfered with Plaintiff's circulation. (*Id.* ¶ 15.)

While in the police vehicle, Plaintiff asked Officer Jones to show him the previous arrest for domestic violence or any previous contact Plaintiff had with the CVPD that led to the failure to appear warrant, but Jones and Defendant Pizzi refused to produce any information. (Pl. Decl. ¶¶ 16-17.) Pizzi and Jones then asked Plaintiff for the keys to his residence so they could retrieve Ms. Vargas' property. (*Id.* ¶¶ 17-18.) When Plaintiff refused to turn over his keys, he was charged with a misdemeanor petty theft. (*Id.* ¶ 18.)

Plaintiff was taken to the CVPD lock up, and Officers Jones and Pelano "orchestrated a plan" to obtain a search warrant for Plaintiff's residence and vehicle.  (*Id.* ¶ 19.)  Plaintiff asserts that Officer Jones' probable cause statement "was absolutely false" and a blatant abuse of authority because Ms. Vargas stated on camera that she was responsible for placing her property in Plaintiff's residence so there was no theft of property.  (PCSOF ¶ 14.)

At Plaintiff's next court appearance, Judge Hamm informed Plaintiff of the Arrest Warrant, and Plaintiff agreed that the Summons and resulting Arrest Warrant were for him, but denied he received them prior to his June 7, 2021 arrest, or was present at the April 9, 2021 interaction between Ms. Vargas and CVPD Officers which led to the filing of the criminal complaint.  (DSOF ¶ 16.)  Plaintiff asserts that Defendant Szymanski's April 9, 2021 report, which led to the summons and arrest warrant, was untruthful and failed to include exculpatory information, which led to a complaint being filed against Plaintiff.[7] (PCSOF ¶ 16.)

## V.   Legal Standards

### A.   Fourth Amendment

To prevail on a Fourth Amendment wrongful arrest claim, a plaintiff must be able to show that there was no probable cause for the search or seizure.  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citation omitted); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  Probable cause exists when an officer has reasonably trustworthy information of facts and circumstances that are sufficient to justify the belief that an offense has been or is being committed.  *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175−76 (1949) (internal quotation marks omitted)).  "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging

---

[7] Plaintiff does not specify what was not truthful or what exculpatory information was not included in Szymanski's report.  Plaintiff also cites to various CVPD reports, and he claims members of the CVPD made false allegations, but he does not say what in those reports was false.  (*See* PCSOF ¶ 16.)

1    whether his actions were reasonable for Fourth Amendment purposes. *John v. City of El*

2    *Monte*, 515 F.3d 936, 940 (9th Cir. 2008).  An arrest warrant is sufficient to establish

3    probable cause because "a judicial determination of probable cause has already been made

4    as a prerequisite to obtaining the arrest warrant." *United States v. Bueno-Vargas*, 383 F.3d

5    1104, 1107 (9th Cir. 2004).  Once probable cause is established, an officer is not required

6    by the Constitution "to investigate independently every claim of innocence, whether the

7    claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v.*

8    *McCollan*, 443 U.S. 137, 146 (1979)); *see also Rivera v. Cnty. of Los Angeles*, 745 F.3d

9    384, 389 (9th Cir. 2014) (Where an arresting officer "had probable cause to arrest the true

10   subject of the warrant, but mistakenly believed that" the plaintiff was the true subject, the

11   relevant inquiry is "whether the arresting officers had a good faith, reasonable belief that

12   the arrestee was the subject of the warrant.").

13   **B.    Qualified Immunity**

14          A defendant in a § 1983 action is entitled to qualified immunity from damages for

15   civil liability if his conduct does not violate clearly established federal statutory or

16   constitutional rights of which a reasonable person would have known. *Harlow v.*

17   *Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity analysis formerly required

18   the court to make two distinct inquires, the "constitutional inquiry" and the "qualified

19   immunity inquiry." *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir.

20   2002).  The "constitutional inquiry" asks whether, when taken in the light most favorable

21   to the non-moving party, the facts alleged show that the official's conduct violated a

22   constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The "qualified immunity

23   inquiry" asks if the right was clearly established at the relevant time. *Id.* at 201–02.

24          Plaintiff bears the burden of identifying a case where an officer acting under similar

25   factual circumstances was held to have violated the constitution. *Sharp v. Cnty. of*

26   *Orange,* 871 F.3d 901, 911 (9th Cir. 2017).  "[T]he prior precedent must be 'controlling'—

27   from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of

28   courts outside the relevant jurisdiction." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 617

(1999)).  For a right to be clearly established there does not have to be a case directly on point; however, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2017)).  Clearly established law "must be particularized to the facts of the case" and "should not be defined at a high level of generality."  *Id.* (quotation and citation omitted).  A right is clearly established when case law has been "earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."  *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White*, 580 U.S. at 79).  "While a case addressing general principles may clearly establish a right 'in an obvious case,' such obvious cases are 'rare.'"  *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) and *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)).

## VI.   Discussion

### A.   Defendant Wynn

Defendants argue that there is no dispute that Defendant Wynn had no involvement in Plaintiff's June 7, 2021 arrest and therefore Wynn's conduct cannot be said to have violated the Constitution or clearly established law.  (Doc. 68 at 10.)  Plaintiff responds that as Chief of the CVPD, Defendant Wynn was responsible for all actions of the officers under his command, as set forth in Arizona Revised Statutes § 13-3871.  (Doc. 76 at 27.)

Plaintiff does not assert any overt participation by Defendant Wynn but appears to seek to hold Wynn liable as a supervisor of Defendants Pizzi and Szymanski.[8]

---

[8] Plaintiff did not state in his First Amended Complaint if he is suing Wynn in his individual or official capacity, but the Court presumes Plaintiff is suing Wynn in his individual capacity because Plaintiff does not allege that the CVPD Officers were acting pursuant to a policy or custom sufficient to maintain an official capacity claim.  *See Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1188 (9th Cir. 2002) (for a public official to be liable in his official capacity, a plaintiff must show injuries resulting from a policy, practice, or custom of the governmental entity for which that individual exercises final policy-making authority).

There is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-94 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor may be liable in his individual capacity under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 12007 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Overt personal participation is not required for supervisory liability. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A sufficient causal connection can be shown where a supervisor "set[s]in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

Plaintiff has not presented any evidence that Defendant Wynn personally participated in his arrest on June 7, 2021, and, other than Wynn's status as Chief of Police, Plaintiff has not presented a causal connection between any action of Wynn and the Defendant Officers. Accordingly, the Court will grant summary judgment to Defendant Wynn.[9]

### B.    Defendant Szymanski

As with Defendant Wynn, Defendants argue that there is no dispute that Defendant

---

[9] Because Defendant Wynn was clearly not involved in Plaintiff's June 7, 2021 arrest, the Court need not address whether Defendant Wynn is entitled to qualified immunity.

1  Szymanski had no involvement in Plaintiff's June 7, 2021 arrest and therefore his conduct
2  cannot be said to have violated the Constitution or clearly established law.  (Doc. 68 at 10.)
3  Plaintiff responds that everything that happened on June 7, 2021 was due to Defendant
4  Szymanski's "actions and blatant untruthfulness" related to the earlier traffic stop of Ms.
5  Vargas on April 9, 2021 about a mile from Plaintiff's residence.  (Doc. 76 at 28.)  Plaintiff
6  argues that despite Ms. Vargas' obvious intoxication, Szymanski and other members of
7  CVPD forwarded incident reports to the Chino Valley Town Prosecutor that were "more
8  than untruthful by omission" and "intentionally fail[ed] to include exculpatory
9  information," which led to the complaint against Plaintiff and summons.  (*Id*. at 29.)
10  Plaintiff argues he never received the Complaint and summons and was not aware of them
11  because they were mailed to his residence, where there is no mailbox.  (*Id*.)

12       Plaintiff has not presented any evidence supporting that the police reports from
13  April 9, 2021 that formed the basis of the Complaint and summons and eventual arrest
14  warrant were untruthful.  He appears to argue that because Ms. Vargas was not arrested for
15  DUI on April 9, 2021, then the warrant for his arrest based on charges of assault and
16  disorderly conduct should not have been issued.  But that is not a basis for challenging
17  either the warrant or his eventual arrest for failure to appear.

18       Based on this record, there is no genuine issue of material fact that Defendant
19  Szymanski arrested Plaintiff in violation of his Fourth Amendment rights, and the Court
20  will grant summary judgment to Defendant Szymanski.

21       Alternatively, Defendant Szymanski is entitled to qualified immunity.  The Court
22  has reviewed Defendant Szymanski's report from April 9, 2021 (Doc. 76 at 44) and
23  Szymanski's body-worn camera footage from his encounter with Ms. Vargas that day.
24  Contrary to Plaintiff's assertion, Ms. Vargas' conversation with Defendant Szymanski
25  about happened during her argument with Plaintiff that is captured on the body-worn
26  camera does not contradict what Defendant Szymanski included in his report.  Based on
27  this evidence, it would not be obvious to all reasonable government actors in Szymanski's
28  position that what he included in the report violated federal law, and Defendant Szymanski

is therefore entitled to qualified immunity.

### C. Defendant Pizzi

Defendants argue that on June 7, 2021, Defendant Pizzi confirmed that Plaintiff had an outstanding, valid arrest warrant from Chino Valley Municipal Court and that the warrant constituted a judicial command for Pizzi to effect Plaintiff's arrest. (Doc. 68 at 9.) Defendants contend that the facially (and actually) valid warrant established probable cause for Plaintiff's arrest, and the existence of probable cause at the time of arrest creates an absolute bar to Plaintiff's § 1983 false arrest claim. (*Id.*)

Plaintiff responds that when Defendant Pizzi arrested him on June 7, 2021, Pizzi said it was "for the last time the Plaintiff was arrested for domestic violence." (Doc. 76 at 29.) Plaintiff argues that if officers had made a "legitimate attempt" to run a records check on Plaintiff, they would have learned that Plaintiff had not previously been arrested for domestic violence or had any previous contact with CVPD or any Yavapai County law enforcement agency. (*Id.* at 29-30.) Plaintiff argues that surely, "with the VIP treatment" given Ms. Vargas on a felony DUI, he was entitled "on a misdemeanor to have a legitimate check of the records before being taken to jail."[10] (*Id.* at 30-31.)

Plaintiff does not dispute that the summons or arrest warrant were for him or argue that the warrant was invalid or procured by Pizzi by deception. Although Pizzi erroneously attributed the warrant to a previous incident in which Plaintiff was allegedly arrested, Pizzi's statement does not invalidate his arrest of Plaintiff on the warrant; nor would a records check showing that Plaintiff had not actually been arrested for domestic violence have invalidated that warrant. Further, although Plaintiff denies he received either the summons or Complaint prior to his June 7, 2021 arrest, that is also immaterial to the validity of the arrest warrant, and the existence of the arrest warrant is sufficient to establish

[10] Plaintiff also argues that after his arrest, a search warrant was obtained "due to the untruthfulness by Officer Jones and Officer Pelano," but neither Officer Jones or Pelano is a Defendant in this action and, at screening, the Court found only that Plaintiff stated a false arrest claim against Defendants Wynn, Pizzi, and Szymanski, not an unreasonable search claim against them or any other officers.

probable cause for Defendant Pizzi to arrest Plaintiff. *Bueno-Vargas*, 383 F.3d at 1107. Accordingly, the Court will grant summary judgment to Defendant Pizzi.

Alternatively, Defendant Pizzi is entitled to qualified immunity. The Ninth Circuit has held that "qualified immunity applies when it was objectively reasonable for an officer to believe he or she had probable cause to make the arrest." *Hill v. City of Fountain Valley*, 70 F.4th 507, 516 (9th Cir. 2023) (citing *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011)). "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum*, 663 F.3d at 1078 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, even if Defendant Pizzi did not have probable cause to believe Plaintiff had committed a crime, given the existence of the arrest warrant, "not all reasonable police officers would believe that they lacked probable cause to make the arrest." *Hill*, 70 F.4th at 516. If Defendant Pizzi reasonably but mistakenly believed Plaintiff was the subject of the arrest warrant, then based on the totality of the circumstances, Pizzi acted reasonably by arresting Plaintiff. *See Hill v. California*, 401 U.S. 797, 804 (1971) (finding that officers acted reasonably based on the totality of the circumstances, including a good faith, but ultimately mistaken, belief that they were arresting the correct suspect). In short, qualified immunity applies because Plaintiff has not offered any factually analogous case "clearly establishing" that Defendant Pizzi's actions were unlawful under these circumstances. *Hill*, 70 F.4th at 517. The Court concludes that Defendant Pizzi is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 68) and Defendants' Motion to Strike Plaintiff's Amended Statement of Facts (Doc. 77).

(2)     Defendants' Motion to Strike Plaintiff's Amended Statement of Facts (Doc. 77) is **denied**.

(3)      Defendants' Motion for Summary Judgment (Doc. 68) is **granted**.

(4)      All other pending Motions are denied as **moot**.

(5)      This action is **terminated with prejudice**.  The Clerk of Court must enter judgment accordingly.

Dated this 27th day of August, 2024.

James A. Teilborg
Senior United States District Judge